UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| BRYAN G. HAWKINS, ) | |
| ) | |
| Plaintiff, ) | C.A. No. 08-0302 (RMC) |
| ) | |
| v. ) | |
| ) | |
| CHIEF CATHY LANIER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF DEFENDANTS CHIEF CATHY LANIER AND DISTRICT OF COLUMBIA'S PARTIAL MOTION TO DISMISS**

Factually, Plaintiff's brief in opposition to the Motion to Dismiss filed by Chief Lanier and the District of Columbia ("District") sets forth a number of misstatements and irrelevancies that fail to counter the assertions made in the Defendants' brief.[1] Substantively, as demonstrated herein, Plaintiff fares no better.

First, Plaintiff asserts that "Defendants rely on the most liberal interpretation of *Conley v. Gibson,* 355 U.S. 41 (1957) when they reiterate the 'no set of facts rule.'" Opp'n at 6, citing *Conley*, 355 U.S. at 45-46. *Conley* is not even mentioned in Defendants' dispositive motion, and Defendants' description of the standard applied when considering motions to dismiss directly quoted the Supreme Court's decision in *Twombly* and recent a recent D.C. Circuit opinion interpreting it.

---

[1] For example, Plaintiff states that "[n]o answer or motion has been filed on behalf of the other two police officers who have been served." Opp'n at 4. At the time Plaintiff filed his Opposition to the Motion to Dismiss – significantly past the time that the Opposition was due – the deadline for filing a responsive pleading had not yet passed. Additionally, Plaintiff spends nearly two pages, Opp'n at 4-5, asserting that he has properly pled claims that are not even addressed in the pending dispositive motion.

Second, Plaintiff admits that Chief Lanier is being sued in her official capacity only. Opp'n at 7. Thus, for the reasons set forth in Defendants' Memorandum in Support of their dispositive motion at 3-4, Chief Lanier must be dismissed from this matter.

Third, Plaintiff essentially admits that he has failed to state a *Monell* claim through allegations of an unconstitutional policy and practice. *See* Opp'n at 8 ("inadequacy of police training may serve as a basis for Sec. 1983 municipal liability. Therefore the *Monell* requirements regarding 'policy and practice' are not necessary"). Although Plaintiff makes clear that he intends to pursue a claim of municipal liability against the District through a theory of deliberate indifference to an obvious need to train, Plaintiff still tries, and fails to distinguish the *Dant* and *Dorman* cases by alleging (1) that Plaintiff's claim is not barred by prosecutorial misconduct, and (2) that these cases addressed rulings made by the trial court past the Rule 12 stage. Opp'n at 8. These are distinctions without a difference. With respect to *Dant,* Plaintiff is incorrect that "the dismissal of the action . . . was at a later stage than the pleading stage," as the Section 1983 claim was dismissed on a 12(b)(6) motion. *See Dant v. District of Columbia,* 829 F.2d 69, 73 (D.C. Cir. 1987). Moreover, Defendants have cited *Dant* not for the side discussion in the case that mentions prosecutorial immunity, but for the holding that the complaint must be dismissed as it "fail[ed] to allege a necessary element of a section 1983 violation, namely, that there be a deprivation of rights 'under color of any statute, ordinance, regulation, custom, or usage of any State . . . .'" *Id.* at 77. Similarly the fact that *Dorman* addressed judgment on a post-trial motion is of no moment: *Dorman* also confirms that the law of this Circuit requires that a municipality can only be held liable

for a deprivation on a constitutional right where such deprivation was the result of an unconstitutional policy or procedure of the municipality. *Dorman v. District of Columbia,* 888 F.2d 159, 162 (D.C. Cir. 1989). The distinction offered does not change the fact that Plaintiff has failed to allege such a policy.

While Plaintiff claims that he need not pursue a "custom or policy" theory of municipal liability for constitutional torts, at the same time, he fails to rebut Defendants' assertions that Plaintiff has failed to state a claim under the asserted failure-to-train theory. Plaintiff's blanket assertion that the *City of Canton v. Harris* case permits him to proceed overlooks the stringent requirements set forth in that case by the Supreme Court, which relied on the limitations on municipal liability the Court previously established in the *Monell* case.

In *City of Canton*, the Court instructed that a claim of municipal liability may not rest on simply an allegation that a particular officer was not adequately trained, or that more or better training should have been provided. The Court observed that "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *City of Canton v. Harris,* 489 U.S. 378, 391 (19 ). Moreover, Plaintiff has not properly pled, as required by *City of Canton*, that the "city's training program [] be closely related to the ultimate injury." *Id.* Thus, Plaintiff's citation to *City of Canton*, without any supporting legal analysis, is insufficient to survive Defendants' Motion to Dismiss.

Fourth, despite his seeming concession that he is not making a "custom and policy" argument, Plaintiff advances the conclusory allegation that "police officers were the final policy makers in deciding what action to take in searching plaintiff." Opp'n at

3

8.  Plaintiff does not – and indeed cannot – offer any law to support this contention.  In fact, the case upon which Plaintiff relies, *Pembaur v. Cincinnati,* 475 U.S. 469 (1986), supports Defendants' position.  In that case, the Supreme Court explained the limitations of using the "policymaker" approach to satisfy the rigid *Monell* standard.  *Id.* at 481.  There, the Court first explained that:

> The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" is contained in this discussion. The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.

*Id.* at 479.  The Court then held that, under this standard, "[m]unicipal liability attaches only where the decision maker possesses *final authority* to establish municipal policy *with respect to the action ordered*." *Id.* at 481 (emphasis added).  Under this standard, to be a "policymaker" for purposes of municipal liability, it is not enough for a particular official to have "discretion in the exercise of particular functions." *Id.* at 482.  Instead, the Court wrote, "[t]he official must also be responsible for establishing *final* government policy respecting such activity before the municipality can be held liable." *Id.* at 482-83 (emphasis added); *see also Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the authority to make policy that will give rise to municipal liability is final policy…. The District of Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the product of a sanctioned policy ordered or allowed to exist by a municipal official with final policymaking authority in that area.").  Thus, because Plaintiff does not and could not allege that the officers had final policymaking authority or anything other

4

than "discretion in the exercise of particular functions," Plaintiff's contention that the District's employees are policymakers is without merit.

Accordingly, for the reasons stated above and in Defendants' brief in support of their Motion to Dismiss Plaintiff's Amended Complaint, the District and Chief Lanier request that their Motion be granted, that Chief Lanier be dismissed from this case, and that the constitutional claims against the District be dismissed.

Respectfully submitted,

PETER J. NICKLES
Interim Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

  /s/ Samuel C. Kaplan
SAMUEL C. KAPLAN (463350)
Assistant Deputy Attorney General

  /s/ Shana L. Frost
SHANA L. FROST (458021)
Assistant Attorney General
441 4th Street, NW, 6th Floor South
Washington, DC 20001
(202) 724-6534
Fax: (202) 727-3625
shana.frost@dc.gov